UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
JAVIER ALVAREZ,                                       :
                                                    :
                    Plaintiff,          :
                                                    :
          v.                                  :                    3:24-CV-01710 (SFR)
                                                    :
LIAM KINAHAN, *et al*,                  :
                                                    :
                    Defendants.       :
------------------------------------------------------------------ x

**INITIAL REVIEW ORDER**

Plaintiff Javier Alvarez is serving a sentence of imprisonment in the custody of the Department of Correction at Osborn Correctional Institution.[1] He has filed a Complaint alleging that New Britain police officers violated his constitutional rights by using excessive force when arresting him and invasively searching him incident to his arrest. Alvarez also claims that a doctor violated his constitutional rights by denying him a CT scan at the hospital after his arrest.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which

---

[1] Alvarez was sentenced on June 21, 2023, and is currently housed at Osborn Correctional Institution. *See* Department of Correction, *Offender Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304033 (last visited December 5, 2025). The court may take judicial notice of this website. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at \*1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC inmate locator).

relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

I have thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations under 28 U.S.C. § 1915A. Based on this initial review, I order as follows.

## I.    FACTUAL BACKGROUND

I do not set forth all the facts alleged in Alvarez's Complaint but summarize its basic factual allegations here to give context to my ruling below.

The Complaint alleges that Alvarez was walking down the street in New Britain, Connecticut on December 7, 2022, when New Britain police officer Liam Kinahan jumped out of his police cruiser and told Alvarez not to move. ECF No. 1, Compl. ¶¶ 1–2. Kinahan grabbed Alvarez's right arm while Alvarez stood there confused. *Id.* ¶ 2. Officer Jason Walker grabbed Alvarez's left arm. *Id.* ¶ 3. "Out of [no]where," Officer Brandon Hall "blinded" Alvarez with a "powerful punch to [his] face and eye socket area." *Id.* ¶ 4. Alvarez was kneed twice in his upper torso and then tackled face down on the concrete by Kinahan, Walker, and Hall. *Id.* ¶¶ 4–5.

Paramedics responded and placed Alvarez on a stretcher. *Id.* ¶ 6. While on the stretcher, Officer Marcin Ratajczak placed his hands in Alvarez's boxer briefs "in front of everyone," stuck his hand in Alvarez's "private part area," and "started touching and feeling around[,] saying [Alvarez] hid[es] stuff there." *Id.* Ratajczak found nothing. *Id.* Alvarez felt "violated," "sexually assaulted," and "uncomfortable." *Id.*

Paramedics transported Alvarez to a hospital. *Id.* ¶ 7. Alvarez was in "serious pain," had blurred vision," and sustained "head trauma." *Id.* Alvarez asked a doctor if he could

undergo a CT scan. *Id.* The doctor told Alvarez that Alvarez should not tell the doctor how to do his job. *Id.* Alvarez still experiences blurred vision, "uncontrollable headaches," shoulder pain requiring steroid shots, and sees "little black specks." *Id.* ¶ 8.

## II.    DISCUSSION

Complaints filed by *pro se* plaintiffs, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted)); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

I construe Alvarez's complaint as alleging a Fourth Amendment excessive force claim against Officers Kinahan, Walker, and Hall, a Fourth Amendment unreasonable search claim against Officer Ratajczak, and a claim related to the denial of a CT scan against Dr. John Doe. I discuss each in turn.

### A.    Excessive Force Claim

When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Such a claim should thus be considered under the Fourth Amendment's "reasonableness" standard. *Id.* at 395. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Assessing reasonableness requires the balancing of the force with "1. the severity of the crime at issue, 2. whether the suspect poses an immediate threat to the safety of the officers or others, and 3. whether he is actively resisting arrest or attempting to evade arrest by flight."

*Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (internal quotation marks omitted). These factors are judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (internal quotation marks omitted).

The "crime at issue" was apparently a firearm offense. *See* Compl. ¶ 9 (stating that officers used force when arresting Alvarez because he was allegedly in possession of a firearm). I assume, for purposes of initial review, that a firearm offense is sufficiently "severe." However, Alvarez maintains that he has "never been in possession of a firearm or convicted of such a crime in [his] life." *Id.* Taking this statement as true, as I must in my initial review of Alvarez's Complaint, *Dehaney v. Chagnon*, No. 3:17-CV-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (stating that "[t]he Court must accept as true all factual matters alleged in a complaint" during initial review under 28 U.S.C. § 1915A(a)), I will infer that Alvarez was unarmed at the time of his arrest and posed no "immediate threat to the safety of the officers or others," *Brown*, 798 F.3d at 100, by merely walking down the street. *See* Compl. ¶ 2. Lastly, because the officers' purported use of force came "out of [no]where," *id.* ¶ 4, Alvarez does not allege any facts suggesting that he was "actively resisting arrest or attempting to evade arrest by flight," *Brown*, 798 F.3d at 100, when officers punched him in the face, kneed him in the torso, and threw him face down on the concrete. *See* Compl. ¶¶ 4–5.

Although possessing a firearm is a "severe" offense that may, in some cases, justify unusual force to effect an arrest, I cannot conclude from the facts alleged in the Complaint that the force officers used to subdue Alvarez and arrest him for this alleged offense was "reasonable." *See O'Hara v. City of New York*, 570 F. App'x 21, 23 (2d Cir. 2014) (concluding

that "a reasonable jury could have found excessive force" where "[police officer]—who was one of six armed officers on the scene—punched [plaintiff] in the face *without* provocation and then proceeded to punch him repeatedly after the 17-year old fell to the ground.") (emphasis in original). Accordingly, Alvarez may pursue his Fourth Amendment claim for damages against Officers Kinahan, Walker, and Hall in their individual capacities.

### B.      Unreasonable Search

Alvarez also maintains that Officer Ratajczak "st[u]ck[] his hand in [Alvarez's] private part area and started touching and feeling around[,] saying [Alvarez] hide[s] stuff there." Compl. ¶ 6. I analyze this claim, as other courts in this District have with similar claims, under the Fourth Amendment. *See*, *e.g.*, *Love v. Town of Granby*, No. CIV.3:03 CV 1960 EBB, 2004 WL 1683159, at *5 (D. Conn. July 12, 2004) (analyzing under the Fourth Amendment plaintiff's allegation that officer grabbed plaintiff's scrotum and made sexual comments during pat-down search); *Anderson v. Waterbury Police Dep't*, No. 14-CV-829 (VAB), 2017 WL 1157843, at *11 (D. Conn. Mar. 28, 2017) (analyzing under the Fourth Amendment plaintiff's allegation that officer "us[ed] a hand to make one swiping motion between [plaintiff's] butt cheeks under his underwear, without loosening his belt or removing any of his clothing.").

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State," and "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Schmerber v. California*, 384 U.S. 757, 767 (1996); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). To determine if a search is reasonable, courts must balance "the need for the particular search against the invasion of personal rights that the

search entails." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979). This requires courts to analyze "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 762–63 (1969). It is also "entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 763. "Nevertheless, a search incident to a lawfully executed arrest may still violate the Fourth Amendment, if conducted in an otherwise unreasonable manner." *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at *16 (S.D.N.Y. Mar. 26, 2021) (internal quotation marks omitted). "'[U]nreasonable, non-consensual, inappropriate touching,' for example, 'can constitute unreasonable intrusions into a plaintiff's bodily integrity in violation of the Fourth Amendment.'" *Id.* (quotation omitted) (collecting cases).

Although it is true that "not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment," and "[s]ome bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable," *id.* (internal quotation marks omitted), Alvarez's allegations that Ratajczak "touch[ed] and fe[lt] around" Alvarez's "private part area," Compl. ¶ 6, suggest an intentional act that resulted in Alvarez "fe[eling] sexually assaulted and uncomfortable." *Id.* Although Ratajczak may later be exonerated of these allegations, "courts in this circuit have been reluctant to grant summary judgment where there is a genuine dispute of material fact as to whether a defendant officer reached into an arrestee's clothes (as opposed to conducting an over-the-clothes pat-down

search) during a search incident to arrest and made under-the-clothes or skin-to-skin contact with a private area." *West v. Harkness*, No. 917CV0621GTSDJS, 2021 WL 4289515, at \*13 (N.D.N.Y. Sept. 21, 2021). Accordingly, Alvarez's Complaint states sufficient facts to advance this claim for further development of the record. Alvarez may pursue his Fourth Amendment claim for damages against Officer Ratajczak in his individual capacity.

### C.    Claims against New Britain Police Department

Alvarez names New Britain Police Department as a defendant, *see* Compl. 4, presumably because it employed Officers Kinahan, Walker, Hall, and Ratajczak. *See id.* at 3. But to state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that the defendant, a *person* acting under color of state, law deprived him of a federally or constitutionally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). A municipal police department is not an independent governmental entity, but rather "is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function." *Reed v. Hartford Police Dep't*, No. 3:03-CV-2147 (SRU), 2004 WL 813028, at \*2 (D. Conn, Apr. 6, 2004). As such, a municipal police department is not considered to be a "person" under section 1983. *Id.* ("Other courts addressing this issue concur that a municipal police department is not a 'person' within the meaning of section 1983 and not subject to suit.") (collecting cases). To the extent Alvarez intended to bring his Fourth Amendment claims against the New Britain Police Department, all claims asserted against it are dismissed under 28 U.S.C. § 1915A(b)(1).

### D.    Claims against Dr. John Doe

Alvarez also sues Dr. John Doe, ECF No. 1 at 3, the doctor who denied Alvarez a CT scan and told Alvarez that Alvarez should not tell the doctor how to do his job. *Id.* ¶ 7. Even

assuming Alvarez can sue Dr. Doe under § 1983, *see West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that "a physician employed by North Carolina to provide medical services to state prison inmates [ ] acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury"), Alvarez describes, at most, a disagreement over proper treatment, which does not constitute a constitutional violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (noting that "mere disagreement over the proper treatment does not create a constitutional claim"). Even if the doctor's refusal to provide a CT scan was negligent, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Id.* Thus, any claim against Dr. John Doe is dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

## III.    ORDERS

The court enters the following orders:

(1) Alvarez's Fourth Amendment claims brought against Officers Kinahan, Walker, Hall, and Ratajczak shall PROCEED for further development of the record.

(2) All other claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1), and all other defendants are terminated.

(3) The Clerk shall mail a waiver of service of process request packet containing the complaint and this order to Officers Liam Kinahan, Jason Walker, Brandon Hall, and Marcin Ratajczak at the New Britain Police Department, 10 Chestnut Street, New Britain, CT 06051, within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendants fail to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals

Service, and Defendants shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk shall mail a courtesy copy of the complaint and this order to City of New Britain Corporation Counsel Genaro Bizzaro at 27 West Main Street, New Britain, CT 06051.

(9) If Alvarez changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Alvarez must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Alvarez has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) While incarcerated, Alvarez shall use the Prisoner Electronic Filing Program when filing documents with the court. He is advised that the Program may be used only to file documents with the court. Local rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**SO ORDERED.**

New Haven, Connecticut
December 8, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge